# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GREAT AMERICAN INSURANCE COMPANY,

      Plaintiff,

vs.                                    No. CIV 11-1129 JB/KBM

RICHARD A. CRABTREE; LORETTA MARES;
MICHAEL GALLEGOS; STEVEN R. GALLEGOS;
NET LINK, LLC; MICHAEL & ASSOCIATES
PROGRAMMING AND ENGINEERING CORP.;
COMPLIANCE PROCESS INNOVATIONS
SOLUTIONS LLC A/K/A COMPIS; VESA HEALTH
LLC; and WORLD HCS, LLC,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) Defendant Richard Crabtree's Motion to

Dismiss with Prejudice Under Fed. R. Civ. P. 12(b), filed March 9, 2012 (Doc. 28)("Motion to

Dismiss"); (ii) the Motion to Consolidate, filed April 13, 2012 (Doc. 33); and (iii) Plaintiff's Motion

to Strike Exhibits Attached to Defendant Crabtree's Motion to Dismiss, filed April 26, 2012 (Doc.

39)("Motion to Strike").  The Court held a hearing on July 5, 2012.  The primary issues are:

(i) whether the Court should strike certain exhibits from the Motion to Dismiss; (ii) whether the

Court should consolidate this action with <u>Great American Insurance Co. v. Crabtree</u>, No. CIV 12-

0310 JB/ACT (D.N.M.); (iii) whether the statute of limitations bars the claims asserted in the First

Amended Complaint for Subrogation ¶ 15, at 5, filed January 19, 2012 (Doc. 7)("Amended

Complaint"), because St. Vincent Hospital had inquiry notice of the fraud and breach of contract

outside of the four-year and six-year statutes of limitations; (iv) whether Plaintiff Great American

Insurance Company has sufficiently alleged the existence of a contract; and (v) whether Great

American, who paid St. Vincent Hospital for its losses incurred through Defendant Richard A. Crabtree's alleged fraud, seek subrogation against Crabtree.  The Court will deny the Motion to Dismiss, the Motion to Consolidate, and the Motion to Strike.  Because the attached exhibits are not pleadings within the context of rule 12(f) of the Federal Rules of Civil Procedure, the Court will deny the Motion to Strike.  Because there is a motion to remand pending in case number 12-0310, and because the Court has not yet determined whether that case is properly before it, the Court will deny the Motion to Consolidate without prejudice to a party renewing the motion after the Court has decided the remand question.  The Court will deny the Motion to Dismiss, because: (i) the statutes of limitation do not bar the claims asserted in the Amended Complaint; (ii) Great American has alleged sufficient facts to establish that there was a contract; and (iii) Great American may seek subrogation against Crabtree.

## FACTUAL BACKGROUND

Consistent with the Court's duty to take the plaintiff's allegations as true under rule 12(b)(6), the Court takes its facts from the Amended Complaint.  St. Vincent Hospital hired Crabtree as Vice President and Chief Information Officer in 2002 and, in 2006, he was promoted to Senior Vice President and Chief Operating Officer.  See Amended Complaint ¶ 15, at 5.  He was entrusted with broad authorities, including the authority to approve all expenditures related to information-system hardware or software.  See Amended Complaint ¶ 15, at 5.  Within months of his hiring, Crabtree and the other Defendants engaged in a scheme to misappropriate funds from St. Vincent Hospital through the submission of fraudulent invoices.  See Amended Complaint ¶ 16, at 5-6.  Through this scheme the Defendants billed at least $3,238,523.06 for "sham transactions consisting of payment for claimed services that were either never provided or were billed in amounts grossly in excess of their limited value."  Amended Complaint ¶ 16, at 6.  Crabtree was in a personal relationship with

Defendant Loretta Mares.  See Amended Complaint ¶ 17, at 6.  Mares had an ownership interest in a number of companies that began doing business with St. Vincent Hospital when Crabtree was hired, including Defendants Net Link LLC and World HCS LLC.  See Amended Complaint ¶ 18, at 6.  Mares also has an ownership interest in other companies that began doing business with St. Vincent Hospital upon Crabtree's hiring.  See Amended Complaint ¶ 18, at 6.  Mares, through Net-Link, submitted fraudulent invoices, which Crabtree approved, totaling $701,574.00.  See Amended Complaint ¶ 19, at 6.  Mares, through World HCS, also submitted fraudulent invoices for services not rendered, which Crabtree approved, totaling $441,212.52.  See Amended Complaint ¶ 22, at 7.

Defendant Michael Gallegos is Mares' brother and he, through Defendant Michael and Associates Programming and Engineering Corp., did business with St. Vincent Hospital.  See Amended Complaint ¶ 25, at 8.  M. Gallegos, through Michael and Associates, submitted fraudulent invoices for services not rendered, which Crabtree approved, totaling $757,371.41.  See Amended Complaint ¶ 26, at 8-9.  Defendant Steven R. Gallegos is also Mares' brother, and he, through Defendants Compliance Process Innovations Solutions LLC a/k/a COMPIS ("COMPIS") and Vesa Health, did business with St. Vincent Hospital.  Amended Complaint ¶ 29, at 10.  S. Gallegos, through COMPIS and Vesa Health, submitted fraudulent invoices to St. Vincent Hospital for services not rendered, which Crabtree approved, totaling $787,064.73.  See Amended Complaint ¶ 30, at 10.  Infinix, a Texas corporation, submitted fraudulent invoices to St. Vincent Hospital for services not rendered, which Crabtree approved and which totaled $551,300.00.  See Amended Complaint ¶ 33, at 11-12.  One of S. Gallegos' former employees owns Infinix, and Infinix has a contract with Com-Link, a business that Crabtree owns, pursuant to which payments from St. Vincent Hospital were transmitted through Infinix to Com-Link.  See Amended Complaint ¶ 35, at 12-13.  Net Link, Michael and Associates, and World HCS all used the same bank account as part

of the scheme to defraud St. Vincent Hospital, even though they are separate entities.  See Amended Complaint ¶ 38, at 13.

Crabtree, Mares, M. Gallegos, and S. Gallegos participated in a meeting for the purpose of convincing St. Vincent Hospital's compliance officer of Michael and Associates' legitimacy, and, as part of this meeting, they flew Infinix's owner in from San Antonio, Texas to "pose, falsely, as an engineer employed by Defendant Michael & Associates."  Amended Complaint ¶ 39, at 13. Crabtree excluded knowledgeable St. Vincent Hospital personnel from interacting with the other Defendants.  See Amended Complaint ¶ 40, at 14.  The losses were not discoverable until March 2008, because of the Defendants' concealment.  See Amended Complaint ¶ 41, at 14.  St. Vincent Hospital made a claim for recovery to Great American for its losses.  See Amended Complaint ¶ 42, at 14.  Great American made a payment of $3,125,070.00, and, as a result of the payment, Great American has been subrogated to the rights of St. Vincent Hospital to the extent of its payment.  See Amended Complaint ¶ 44, at 14.  St. Vincent Hospital has assigned Great American all of its claims against the Defendants to the extent of the payment.  See Amended Complaint ¶ 45, at 14.

## PROCEDURAL BACKGROUND

Great American filed its Complaint for Subrogation on December 23, 2011.  See Doc. 1. On January 19, 2012, Great American filed its Amended Complaint.  See Doc. 7.  Great American asserts five counts against the Defendants: (i) fraud based on the knowing submission and approval of false invoices; (ii) breach of fiduciary duty against Crabtree based on his approval of fraudulent invoices; (iii) aiding and abetting a breach of fiduciary duty against all Defendants, except Crabtree, for assisting in his breach of fiduciary duty; (iv) breach of contract based on the "legally enforceable terms and conditions of [employment] set forth in [Crabtree's] written employment agreements, including St. Vincent's policies and procedures, his job description, his performance expectations,

St. Vincent's principles and standards for ethics and compliance, and St. Vincent's standards of performance"; (v) civil conspiracy for creating a scheme of false billings and submitting, approving, and accepting payment on fraudulent invoices; and (vi) unjust enrichment based on the payments for services either not rendered or in amounts grossly in excess of the value of the services.  <u>See</u> Amended Complaint at 14-19.  Great American alleges damages in the amount of $3,125,070.00. <u>See</u> Amended Complaint ¶ 68, at 19.

On March 9, 2012, Crabtree filed the Motion to Dismiss.  <u>See</u> Doc. 28.  Crabtree moves the Court to dismiss the Complaint under rule 12(b)(6), because: (i) Great American did not file the Complaint within the relevant statute of limitations period; and (ii) Crabtree did not have a contract with Great American.  <u>See</u> Motion to Dismiss at 1.  Crabtree asserts that, "[w]hile the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute."  Motion to Dismiss at 2 (citing <u>Andrew v. Schlumberger Tech. Corp.</u>, 808 F.Supp.2d 1288, 1292 (D.N.M. 2011)(Browning, J.)).  He argues that the "last alleged date of fraud is December 20, 2007," and that the Complaint was filed December 23, 2011, outside of the four-year statute of limitations for fraud.  Motion to Dismiss at 3.  He contends that, under N.M.S.A. 1978, § 37-1-4, the statute of limitations for fraud is four years and that this statute applies to Counts I, II, III, and V alleged in the Complaint.  <u>See</u> Motion to Dismiss at 4-5.  He asserts that, under N.M.S.A. 1978, § 37-1-3, the statute of limitations for Count IV for breach of contract is subject to a six-year statute of limitations.  <u>See</u> Motion to Dismiss at 5.

Crabtree argues that St. Vincent Hospital knew or should have known of the alleged fraud in 2003, or by 2005 or 2006.  <u>See</u> Motion to Dismiss at 5.  He asserts that the United States Court of Appeals for the Tenth Circuit has affirmed the dismissal of claims where the plaintiff knew or

should have known of the fraud at a date outside of the statute of limitations.  See Motion to Dismiss

at 5-7 (citing Shields v. Boettcher Inv. Corp., 13 F.3d 406, 1993 WL 482902 (10th Cir.

1993)(unpublished table decision)).  He points out that New Mexico courts have applied the same

standard and held that the statute of limitations begins to accrue when a reasonably diligent

investigation would lead to knowledge of the fraud.  See Motion to Dismiss at 7 (citing Romero v.

Sanchez, 83 N.M. 358, 361, 492 P.2d 140, 143 (1971)).  He contends that, in this case, "the Hospital

was on notice of Crabtree's alleged fraud in 2003 and was unequivocally on notice in the 2005-2006

time frame."  Motion to Dismiss at 9.  Crabtree asserts that, in 2003, "Concerned Employees of

SVH" sent a memorandum to the St. Vincent Hospital Board of Directors alleging that Crabtree was

getting kickbacks from certain vendors.  Motion to Dismiss at 9 (citing Letter from Concerned

Employees of SVH to SVH Board of Directors (not dated), filed March 9, 2012 (Doc. 28-

1)("Concerned Letter")).  He further asserts that his assistant, Diana Sanger, became suspicious in

early 2005, because of how many checks she was asked to write.  See Motion to Dismiss at 9-10

(citing Interview of Diana Sanger (dated January 26, 2011), filed March 9, 2012 (Doc. 28-2)).  He

argues that an audit was done and that an investigation was done regarding the fraud alleged in 2006.

See Motion to Dismiss at 12-13 (citing Interview of Margo Dittrich (dated November 5, 2010), filed

March 9, 2012 (Doc. 28-3); Interview of Rick Doxtator (dated November 27, 2010), filed March 9,

2012 (Doc. 28-4)).  He contends that the Chief Financial Officer, Rick Doxtator, confirmed that the

fraud subject to investigation in 2006 is the same fraud that is the subject of this lawsuit and that

Sanger brought him documents to support the allegations.  See Motion to Dismiss at 13-14 (citing

Interview of Rick Doxtator at 17, 40, 42).  Crabtree asserts that President and Chief Executive

Officer, Alex Valdez, was aware of an investigation into Michael and Associates beginning in 2006.

See Motion to Dismiss at 14 (citing Interview of Alex Valdez at 55 (dated November 5, 2010), filed

March 9, 2012 (Doc. 28-5)).  Crabtree argues that inquiry notice is all that is required and that, by

2006, St. Vincent Hospital was on actual notice.  <u>See</u> Motion to Dismiss at 15.  He asserts that

nothing he did prevented St. Vincent Hospital from discovering the fraud.  <u>See</u> Motion to Dismiss

at 15-16.

      With respect to Count IV, Crabtree argues that this claim fails, because there was no contract

with Crabtree and notes that Great American failed to attach a copy of the alleged contract to the

Complaint.  <u>See</u> Motion to Dismiss at 18 & n.14.  Crabtree asserts that he was an at-will employee

and never had a contract with St. Vincent.  <u>See</u> Motion to Dismiss at 18.  Furthermore, Crabtree

asserts that Great American cannot seek subrogation against him, because, as a member of St.

Vincent Hospital, he is Great American's insured.  <u>See</u> Motion to Dismiss at 18 (citing <u>State v.</u>

<u>Regents of N.M. State Univ.</u>, 117 N.M. 738, 877 P.2d 38 (1994)).  He argues that, even if this suit

goes forward, he will cross-claim against the hospital, because "they undoubtedly will have to

indemnify him for any award under respondeat superior."  Motion to Dismiss at 18.

      On March 9, 2012, Crabtree filed Defendant Richard Crabtree's Notice of Supplemental

Exhibit F to His Motion to Dismiss with Prejudice under Fed. R. Civ. P. 12(b).  <u>See</u> Doc. 29.  He

then attaches a confidential draft memorandum from Dittrich to Valdez.  <u>See</u> Memorandum from

Margo R. Dittrich, Vice President Compliance, to Alex Valdez, President and CEO (dated March

29, 2006), filed March 9, 2012 (Doc. 29-1)("Confidential Memo").

      On April 26, 2012, Great American filed the Plaintiff's Response in Opposition to Defendant

Crabtree's Motion to Dismiss.  <u>See</u> Doc. 38 ("MTD Response").  Great American notes that, when

deciding a motion under rule 12(b)(6), the Court must accept as true the complaint's factual

allegations.  <u>See</u> MTD Response at 4 (citing <u>Bangerter v. Orem City Corp.</u>, 46 F.3d 1491, 1502

(10th Cir. 1995)).  It further asserts that, in ruling on a rule 12(b)(6) motion, the Court "may consider

only the complaint itself, and a few other limited categories of materials including exhibits attached to the complaint, documents the complaint incorporates by reference, and materials of which the court may take judicial notice." MTD Response at 5 (citing Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)). It contends that, when a party submits extrinsic evidence in support of a motion under rule 12(b)(6), "and the court does not exclude such evidence, then the motion must be converted into a motion for summary judgment under rule 56." Response at 5. Great American argues that a motion to dismiss is not an appropriate vehicle through which to decide contested limitations issues. See MTD Response at 6 (citing Aldrich v. McCulloch Props., Inc., 627 F.3d 1036, 1042 (10th Cir. 1980)). It further asserts that a plaintiff is "not required to anticipate a defendant's affirmative defenses, or to plead around them in a complaint." MTD Response at 6 (citing Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006)). It contends that, in other cases in which the Court has granted motions to dismiss based on the statute of limitations, the issue was solely a legal question and that, in this case, the limitations period is a disputed question of fact. See MTD Response at 6 n.2 (citing Andrew v. Schlumberger Tech. Co., 808 F.Supp.2d 1288, 1300 (D.N.M. 2011)(Browning, J.); Lymon v. Aramark Corp, 728 F.Supp.2d 1207 (D.N.M. 2010)(Browning, J.)).

Great American argues that the Court should strike and disregard the evidence which Crabtree submitted, because the Court cannot properly consider such items on a motion to dismiss. See MTD Response at 9. It asserts that the evidence submitted would not be permissible even under rule 56, because the documents are not admissible evidence. See MTD Response at 10. Great American contends that the documents are unauthenticated, unsworn, and incomplete. See MTD Response at 10. It further asserts that it is unable to respond to such evidence, because discovery has not yet begun. See MTD Response at 11. It argues that the Complaint establishes that

Crabtree's fraudulent conduct remained undiscovered until March 2008, within the four-year limitations period.  See MTD Response at 12.  Great American emphasizes that the Court must draw all reasonable inferences in its favor.  See MTD Response at 12 (citing Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1244 (10th Cir. 1999)).  It contends that there are no allegations in the Amended Complaint that would support a contention that St. Vincent Hospital was aware of the fraud before 2008 and that Crabtree cannot rely on material outside of the Amended Complaint to establish that discovery of the fraud occurred earlier.  See MTD Response at 12-13.  Great American also asserts that New Mexico law recognizes that fraudulent concealment tolls the statute of limitations, and that it has alleged that Crabtree and the other Defendants fraudulently concealed their conduct.  See MTD Response at 13 (citing Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 115 N.M. 690, 697-98, 858 P.2d 66, 73-74 (1993); Gaston v. Hartzell, 89 N.M. 217, 219, 549 P.2d 632, 634 (1976)).  It contends that, in addition to Crabtree's active acts of deception, Crabtree, as Chief Operating Officer, owed a fiduciary duty to St. Vincent Hospital such that "the failure to disclose material facts or the suppression of material facts when required to disclose them, which induces detrimental reliance, may constitute fraudulent concealment giving rise to equitable estoppel." MTD Response at 14 (citing Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 115 N.M. at 701, 858 P.2d at 77).

        With respect to the breach-of-contract claim, Great American asserts that its claim falls within the six-year statute of limitations.  See MTD Response at 17.  It argues that Crabtree provides no support for his assertion that he is an at-will employee, but that, in any event, his "status as an 'at-will' employee has no bearing on whether or not he is in breach of a written contract," because being "'at-will' simply means that an employee may be terminated at any time without cause" and because "an employment contract may be implied in fact from a term exhibited in writing in, for

example, a personnel policy manual." MTD Response at 17-18 (citing <u>Garcia v. Middle Rio Grande Conservancy Dist.</u>, 121 N.M. 728, 918 P.2d 7 (1996)).  It points out that it has specifically alleged that Crabtree's employment was "governed by written employment agreements" and that, on a motion to dismiss, these allegations must be accepted as true.  MTD Response at 18.  Regarding its subrogation rights, Great American argues that it paid over three million dollars to St. Vincent Hospital, because of losses incurred as a consequence of Crabtree's conduct.  <u>See</u> MTD Response at 18.  It asserts that "Crabtree is not the insured, but the wrongdoer."  MTD Response at 18 (citing <u>Chrysler Ins. Co. v. Dorminey</u>, 271 Ga. 555, 557, 522 S.E.2d 232, 233 (1999)).  It contends that, because "the wrongful acts were all committed outside the course and scope of his employment, Defendant Crabtree was not an insured under St. Vincent's insurance policy."  MTD Response at 18 (citing <u>Fed. Ins. Co. v. Ward</u>, 166 F.App'x 24, 29-30 (4th Cir. 2006)(unpublished)).  Great American argues that it is fully subrogated to the rights of its insured, which includes the claims against Crabtree.  <u>See</u> MTD Response at 19 (citing Amended Complaint ¶¶ 1, 42-45, at 2, 14).

On May 24, 2012, Crabtree filed Defendant Richard Crabtree's Reply in Support of His Motion to Dismiss with Prejudice Under Fed. R. Civ. P. 12(b).  <u>See</u> Doc. 51 ("MTD Reply").  Crabtree asserts that Great American has incorrectly stated that all a plaintiff needs to do is "nudge his claims across the line from conceivable to plausible" and that, instead, to survive a motion to dismiss

> a complaint . . . must provide . . . factual allegations that when assumed to be true raise a right to relief above the speculative level.  Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.

MTD Reply at 3 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  Furthermore, Crabtree argues that Great American mistakenly contends that the Court "must only consider the

allegations set forth in the First Amended Complaint," and that the Court may, in certain circumstances, look at "evidence before the court [which] clearly and convincingly persuade[s] the trial judge that plaintiff in the exercise of reasonable diligence would have discovered the fraud at such time as to bar the action."  MTD Reply at 3 (citing New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP, 336 F.3d 495 (6th Cir. 2003); Shields v. Boettcher Inv. Corp., 1993 WL 482902, at *1).  He contends that this case is "one of alleged fraudulent concealment in which Plaintiff had more than constructive knowledge from facts in public records; Plaintiff had actual knowledge and acted on it by conducting an investigation."  MTD Reply at 4 (citing Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10th Cir. 1985)).  He notes that, although Great American asserts that his evidence is unauthenticated and inadmissible hearsay, it does not dispute the veracity of the evidence.  See MTD Reply at 5.  Crabtree asserts that not one of the documents he has submitted is for the truth of the matter asserted, but rather to show that the hospital was on inquiry notice.  See MTD Reply at 6 (citing Fed. R. Evid. 801(c)(2)).  He further asserts that the Concerned Letter represents a then-existing state of mind of the concerned employees, and that the transcribed statements are a recorded recollection and a business record.  See MTD Reply at 6.

Crabtree contends that Great American's tolling and fraudulent concealment arguments fail, because the statute of limitations began to run when St. Vincent Hospital knew or should have known of the injury.  See MTD Reply at 7.  He argues that Great American did not meet its burden to show that the limitations should toll.  See MTD Reply at 7.  He contends that his conduct did not prevent St. Vincent's Hospital from investigating any allegations of fraud and that Great American admits Crabtree's conduct only minimized the risk of discovery.  See MTD Reply at 8.  He notes that, in Sterlin v. Biomune Systems, 154 F.3d 1191 (10th Cir. 1998), the Tenth Circuit considered a newspaper article that was not part of the pleadings.  See MTD Reply at 10.  Crabtree asserts that,

because the Amended Complaint shows that the statute of limitations bars Great American's claims, the burden is on Great American to prove tolling and that the Court should not accept that the fraud was not discovered until 2008. <u>See</u> MTD Reply at 11. With respect to the breach-of-contract claim, Crabtree argues that Great American "cannot cite to any allegations showing the existence of a contract between the hospital and Mr. Crabtree." MTD Reply at 12. He further asserts that there is no allegation "as to what provision of any supposed contract Mr. Crabtree breached or how he breached it." MTD Reply at 12.

On April 13, 2012, S. Gallegos, COMPIS, and Vesa Health (hereinafter the "S. Gallegos Defendants"), filed their Motion to Consolidate. Doc. 33. The S. Gallegos Defendants ask that the Court consolidate this case with <u>Great American Insurance Co. v. Crabtree</u>, No. CIV 12-0310 JB/ACT, because the cases are identical. <u>See</u> Motion to Consolidate at 1.[1] They point out that the complaints in both cases bring the same six counts: (i) fraud; (ii) breach of fiduciary duty; (iii) aiding and abetting; (iv) breach of contract; (v) civil conspiracy; and (vi) unjust enrichment. <u>See</u> Motion to Consolidate at 3. They argue that, pursuant to rule 42 of the Federal Rules of Civil Procedure, "[i]f actions before the court involve a common question of law or fact, the court may: 1) join for hearing or trial any or all matters at issue in the actions; 2) consolidate the actions; or, 3) issue any other orders to avoid unnecessary cost or delay." Motion to Consolidate at 3. They contend that the Court has discretion to determine whether to consolidate two actions and that the cases need not be identical. <u>See</u> Motion to Consolidate at 3-4 (citing <u>Conn. Gen. Life Ins. Co. v. Sun Life Assurance Co. of Can.</u>, 210 F.3d 771 (7th Cir. 2000); <u>Malcolm v. Nat'l Gypsum Co.</u>, 995 F.2d

---

[1] Case number 12-0310 was originally assigned to the Honorable Judith C. Herrera, United States District Judge, <u>see</u> Notice, filed May 11, 2012 (Doc. 9), but, pursuant to the parties request, was reassigned to the Court on July 9, 2012, <u>see</u> Notice, filed July 9, 2012 (Doc. 13).

346 (2d Cir. 1990)).  They argue that every issue of law and fact between these two cases are identical.

On April 30, 2012, Great American filed the Plaintiff's Response in Opposition to Motion to Consolidate.  See Doc. 41 ("Consolidation Response").  Great American points out that case number CIV 12-0310 is a removed case and that it has filed a motion to remand in that case. See Consolidation Response at 2.  It argues that, in "light of Plaintiff's Motion to Remand, and the likelihood that the motion will be granted, the Court should deny the Gallegos Defendants' Motion to consolidate."  Consolidation Response at 2.  Great American asserts that the Court has discretion to consolidate "actions involving a common question of law or fact are pending before the court." Consolidation Response at 2 (citing Leviton Mfg. Co. v. Nicor, Inc., Nos. 04-0424, 04-1295, 2007 WL 505784, at *3 (D.N.M. Jan. 8, 2007)(Browning, J.)).  Great American contends that the Court should not consolidate the cases, because the Court does not have jurisdiction over case number CIV 12-0310.  See Consolidation Response at 3 (citing U.S. for Use of Owens-Corning Fiberglass Corp. v. Brandt Constr. Co., 826 F.2d 643, 647 (7th Cir. 1987)).  It asserts that, because case number CIV 12-0310 was improperly removed, it is not "pending before the court" for the purposes of rule 42(a). Consolidation Response at 3.

On May 14, 2012, the S. Gallegos Defendants filed their Reply to Response in Opposition to Motion to Consolidate.  See Doc. 45 ("Consolidation Reply").  The S. Gallegos Defendants point out that Great American does not dispute that the factual statements and questions of law between the two cases are identical.  See Consolidation Reply at 1.  They argue that "it is the parallel litigation of two identical cases which is likely to cause delay, confusion, and prejudice (not to mention unnecessarily increased costs and complexity imposed on all parties)."  Consolidation Reply at 2.  They contend that the only issue in case number CIV 12-0310 is a matter of removal

-13-

procedure, not jurisdiction, and that the Court need not wait for the outcome of the remand dispute before deciding the consolidation issue.  See Consolidation Reply at 2-3.

On April 26, 2012, Great American filed its Motion to Strike.  See Doc. 39.  Great American asserts that, when considering a motion to dismiss, a court generally will not consider documents outside of the complaint.  See Motion to Strike at 1 (citing MacArthur v. San Juan Cnty., 309 F.3d 1216, 1221 (10th Cir. 2002)).  It acknowledges that there are two exceptions to this rule: "(1) the court may consider legal argument contained in the parties' briefs and (2) the court may consider indisputably authentic copies of documents that are referred to in the complaint or central to the plaintiff's claims."  Motion to Strike at 1-2.  It notes that the Court is not required to consider such extraneous material.  See Motion to Strike at 2 (citing Prager v. LaFaver, 180 F.3d 1185, 1189 (10th Cir. 1999)).  Great American asserts that Crabtree relies on "six extraneous documents to support his arguments in his motion to dismiss," and that "[n]one of the exhibits is a document that is referred to in the First Amended Complaint or that is central to Plaintiff's claims."  Motion to Strike at 3 (citing Smith v. United States, 561 F.3d at 1098).  It emphasizes that Crabtree made "no attempt to authenticate or establish the admissibility of any of the exhibits," and that, "[c]ontrary to customary practice, he did not attach the exhibits to an affidavit of a person with personal knowledge, who could attest to their authenticity."  Motion to Strike at 3.  With respect to the Concerned Letter, Great American asserts that it "has never seen this document before and had no knowledge of its existence," and "disputes its authenticity."  Motion to Strike at 4.  It argues that the "only explanation given for this document is the statement in Defendant Crabtree's motion that Alex Valdez provided the letter to Defendant Crabtree . . . , which hardly is a sufficient foundation."  Motion to Strike at 4 (citing Kirk v. City of Tulsa, 72 F.App'x 747, 750 (10th Cir. 2003)(unpublished)).  With respect to the transcript excerpts from interviews with various St.

-14-

Vincent Hospital personnel, Great American contends that there is "no indication that these interviews were conducted under oath" and that "the transcriptions of these interviews are not certified." Motion to Strike at 4. It further asserts that Crabtree has not attached complete copies of the interviews to the motion and that "[s]uch hearsay evidence is inadmissible." Motion to Strike at 4 (citing Kirk v. City of Tulsa, 72 F.App'x at 750; Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995)). Regarding the Confidential Memo, Great American asserts that, again, Crabtree laid no foundation for the exhibit and has not shown that it is credible evidence. See Motion to Strike at 4-5.

On May 24, 2012, Crabtree filed Richard Crabtree's Response to Plaintiff's Motion to Strike Exhibits Attached to Defendant Crabtree's Motion to Dismiss [Doc. 39] [sic]. See Doc. 52 ("Strike Response"). Crabtree asserts that the exhibits are proper, because the Tenth Circuit and district courts have allowed similar documents. See Strike Response at 2. He argues that Great American does not dispute the veracity of the exhibits, and that it does not deny that hospital employees made statements admitting knowledge of the fraud or that the hospital did not conduct an investigation into the fraud in 2006. See Strike Response at 2. He emphasizes that Great American also does not elaborate how these documents are hearsay or why no hearsay exception applies. See Strike Response at 2. He next argues that, even if the Court strikes the exhibits, Great American has not met its burden to show that the statute of limitations should be tolled. See Strike Response at 4. He contends that, to toll the statute of limitations based on fraudulent concealment, Great American must show: (i) "the use of fraudulent means by the party who raises the bar of the statute"; (ii) successful concealment from the injured party; and (iii) "that the party claiming fraudulent concealment did not know or by the exercise of reasonable diligence could not have known that he might have a cause of action." Strike Response at 4 (citing FDIC v. Schuchmann, 224 F.Supp.2d

1332, 1342 (D.N.M. 2002)(Vazquez, J.)).  Crabtree asserts that Great American did not analyze the elements of fraudulent concealment and offers no reason why reasonable diligence would not have revealed the fraud.  <u>See</u> Strike Response at 4.  He argues that "there was nothing that would stop the executive members of St. Vincent from contacting their vendors."  Strike Response at 5.  He contends that, because, under the Amended Complaint, the statute of limitations bars the claims, Great American must prove tolling and that the Court should not accept the single fact alleged in the Amended Complaint that the fraud was not discovered until March 2008.

On June 18, 2012, Great American filed its Reply in Support of Plaintiff's Motion to Strike Exhibits Attached to Defendant Crabtree's Motion to Dismiss.  <u>See</u> Doc. 56 ("Strike Reply").  Great American asserts that, in the cases to which Crabtree cites, the courts relied on undisputed facts to find that the plaintiff was on inquiry notice.  <u>See</u> Strike Reply at 2.  With respect to the transcribed interviews, Great American asserts that they are offered as testimony, for the truth of their contents, and that they do not qualify as recorded recollections.  <u>See</u> Strike Reply at 4.  Regarding the Concerned Letter, it argues that it is not a statement of anyone's "then-existing state of mind," but is a statement "of memory or belief to prove the fact remembered or believed."  Strike Reply at 4-5 (citing <u>McInnis v. Fairfield Cmtys., Inc.</u>, 458 F.3d 1129, 1143 (10th Cir. 2006)).  It asserts that the Confidential Memo is likewise hearsay, because a custodian or other qualified witness has not shown that the record meets the requirements of rule 803(6) of the Federal Rules of Evidence.[2]  <u>See</u> Strike Reply at 5.  It contends that "Crabtree has made no showing as to the admissibility of the exhibits," and that they are not public records or subject to judicial notice.  Strike Reply at 6 (Fed. R. Evid. 803(8); <u>United States v. Killingsworth</u>, 1117 F.3d 1159, 1162 n.1 (10th Cir. 1997)).

---

[2]Rule 803(3) excepts from the hearsay rule "Records of a Regularly Conducted Activity." Fed. R. Evid. 803(6).

On July 5, 2012, the Court held a hearing.  The Court began with its initial thoughts regarding the motions.  See Transcript of Hearing at 4:11-12 (July 5, 2012)(Court)("Tr.").[3]  The Court indicated that it was perhaps too early for the Court to decide whether to consolidate this case with No. CIV 12-0310 and that, if the case is remanded, there would be nothing with which to consolidate this case.  See Tr. at 4:13-5:1 (Court).  With respect to the Motion to Strike, the Court stated that it was not inclined to strike the exhibits, because rule 12(f) refers to striking pleadings, but that it would not consider those exhibits in deciding the Motion to Dismiss.  See Tr. at 5:1-21 (Court).  The Court stated that it was inclined to deny the Motion to Dismiss without prejudice to the Defendants raising the statute of limitations issue in a motion for summary judgment.  See Tr. at 5:22-6:2 (Court).

With respect to the Motion to Consolidate, the S. Gallegos Defendants argued that the Court could consolidate the cases and then decide whether to remand the case.  See Tr. at 6:23-7:7 (Foster).  The S. Gallegos Defendants asserted that they had filed a motion to consolidate only in this case.  See Tr. at 7:10-11 (Foster).  They argued that the cases are identical and that Great American's argument rests on its belief that it will be victorious in its motion to remand, which remains undecided.  See Tr. at 7:14-23 (Foster).  They asserted that Great American is relying on a procedural defect and that the Defendants did not have unanimous consent to remove the case. See Tr. at 9:1-8 (Foster).  The Court asked Great American what advantages it saw to having one case in federal court and another in state court.  See Tr. at 11:6-7 (Court).  Great American responded that it filed both cases, because it thought there may be some issues as to diversity jurisdiction and wanted to avoid a statute-of-limitations problem.  See Tr. at 11:8-16 (Bienvenu).

---

[3]The Court's citations to the transcript are to the Court Reporter's original, unedited version. Any final version may contain slightly different line or page numbers.

It stated that it believed that one of the cases would be stayed at some point. <u>See</u> Tr. at 11:20-22 (Bienvenu). Great American asserted that it had no preference between the Court and Judge Herrera with respect to who decides the motion to remand, but argued that it would be improper to consolidate the cases at this point, because the second case might be remanded. <u>See</u> Tr. at 13:8-20 (Bienvenu). It stated that, should the motion to remand be denied, it would stipulate to consolidation. <u>See</u> Tr. at 13:24-14:5 (Bienvenu). The Court asked whether it would be appropriate for the Court to conditionally grant the Motion to Consolidate only if No. CIV 12-0310 remains in federal court and the Court would ask Judge Herrera whether she would like the Court to handle that case. <u>See</u> Tr. at 14:6-14 (Court). The parties agreed that this proposal was acceptable. <u>See</u> Tr. at 14:15-15:13 (Court, Bienvenu, Foster, Singer, Garcia).

The Court then asked Great American if it was comfortable with the Court denying the Motion to Strike, but considering the arguments therein with respect to the Motion to Dismiss. <u>See</u> Tr. at 15:14-21 (Court). Great American responded that it had no objection to the Court's proposal and that it filed the Motion to Strike out of an abundance of caution. <u>See</u> Tr. at 15:22-16:1 (Bienvenu). Accordingly, the Court denied the Motion to Strike. <u>See</u> Tr. at 16:4-6 (Court).

Turning to the Motion to Dismiss, Crabtree argued that the Court could consider the exhibits he had attached. <u>See</u> Tr. at 16:9-13 (Garcia). The Court asked what his best argument was that the Court can consider documents outside of the Amended Complaint. <u>See</u> Tr. at 16:14-22 (Court). Crabtree asserted that the exceptions to the general rule apply in this case and that the Tenth Circuit analyzed a document outside the complaint in <u>Shields v. Boettcher Inv. Corp.</u>, a case addressing whether the statute of limitations barred a claim. <u>See</u> Tr. at 16:23-17:6 (Garcia). He also pointed to <u>Sterlin v. Biomune Systems</u>, another case in which the Tenth Circuit dismissed a case based on the statute of limitations and relied on an article outside the scope of the complaint. <u>See</u> Tr. at 17:8-

13 (Garcia). He emphasized that the Court could consider these documents without converting the Motion to Dismiss into a motion for summary judgment and confirmed that no party wished for the Court to apply rule 56. See Tr. at 17:14-18:4 (Court, Garcia). He also argued that Great American has never asserted what evidence it would bring forward to dispute his evidence and that it has not made a credible showing that the documents are not authentic. See Tr. at 18:4-13 (Garcia). The Court then asked what documents, in Shields v. Boettcher Investment Corp., the district court examined. See Tr. at 19:17-19 (Court). Crabtree responded that the Tenth Circuit was not clear on what evidence the district court relied. See Tr. at 19:20-21 (Garcia). With respect to Sterlin v. Biomune Systems, the Court asked whether the article on which the district court relied was attached to or discussed in the complaint. See Tr. at 20:12-24 (Court). Crabtree stated that he did not believe the article was associated with the complaint, but that he was unsure. See Tr. at 20:25-21:2 (Garcia). Crabtree argued that, even if the Court does not consider his evidence, the Court may still dismiss the Amended Complaint on its face, because the last alleged date of fraud is December 20, 2007, and the Complaint was filed on December 23, 2011 -- outside of the statute of limitations period. See Tr. at 21:24-22:14 (Garcia). He asserted that the bald assertion of fraudulent concealment is not enough to toll the statute of limitations. See Tr. at 23:25-24:3 (Garcia).

The S. Gallegos Defendants noted that rule 9(b) of the Federal Rules of Civil Procedure would apply to the allegations of fraudulent concealment. See Tr. at 25:14-22 (Foster). They then argued that pleading fraudulent concealment in the Amended Complaint is insufficient, because it must be pled with particularity. See Tr. at 25:25-26:12 (Foster).

Great American noted that Shields v. Boettcher Investment Corp. is not a very recent Tenth Circuit case, because it was decided in 1993, and that the Tenth Circuit does not make clear what evidence either the district court or the Tenth Circuit considered. See Tr. at 27:15-20 (Bienvenu).

-19-

Great American emphasized that Crabtree has not authenticated the majority of the documents that he submitted and asserted that the responding party does not have the burden to dispute a document which has not been properly authenticated. <u>See</u> Tr. at 28:10-29:1 (Bienvenu). It contended that it is not currently in a position to dispute the exhibits presented to the Court, because the parties have not yet initiated discovery. <u>See</u> Tr. at 29:16-30:1 (Bienvenu). Great American asserted that it had never seen the Concerned Letter before Crabtree filed it. <u>See</u> Tr. at 30:2-6 (Bienvenu). It argued that, even if the Court found that St. Vincent Hospital had some inquiry notice, the ruling would not dispose of the case, because, here, there were multiple instances of fraud which multiple parties committed. <u>See</u> Tr. at 32:18-33: 6 (Bienvenu). Great American contended that whether these documents would begin the limitations period was an intense factual question that the Court should not review in the context of a motion to dismiss. <u>See</u> Tr. at 33:20-34:3 (Bienvenu). It asserted that it alleged fraudulent concealment to the extent that it knew such facts at the time the Complaint was filed. <u>See</u> Tr. at 34:10-13 (Bienvenu). Great American argued that the statute of limitations did not begin to accrue until March 2008, when the fraud was first discoverable. <u>See</u> Tr. at 34:18-35:4 (Bienvenu). It contended that the statute of limitations did not begin to accrue until discovery, and, for the purposes of this motion, Great American argued it did not have to plead the date of discovery with particularity. <u>See</u> Tr. at 35:13-37:1 (Court, Bienvenu).

With respect to the allegations of fraudulent concealment, Great American emphasized that all of the facts alleged need to be taken into consideration and that it was the chief operating officer who perpetrated the fraud. <u>See</u> Tr. at 37:9-19 (Bienvenu). It asserted that the Court should infer that Crabtree could engage in activities without oversight and that, because the fraud was not discovered until March 2008, the Court should infer that he was successful in concealing his fraud. <u>See</u> Tr. at 37:20-38:12 (Bienvenu). Great American further emphasized that it made specific allegations of

concealment in paragraph 40, wherein it alleges that Crabtree and the other Defendants participated in a meeting for the purposes of concealing the fraud.  <u>See</u> Tr. at 38:17-39:6 (Bienvenu).

Turning to the contract claims, the Court asked Crabtree whether Great American alleged that a contract existed.  <u>See</u> Tr. at 42:7-9 (Court).  Crabtree responded that one was not alleged.  <u>See</u> Tr. at 42:14-15 (Garcia).  He also argued that, if the Court considers the evidence he had attached, then the contract claim would also fall outside the statute of limitations, because the fraud, and thus the breach of contract, should have been discovered in 2003.  <u>See</u> Tr. at 42:20-43:2 (Garcia).  Great American responded that it alleged a contract in several places in the Amended Complaint and that those allegations should be treated as true for the purposes of the Motion to Dismiss.  <u>See</u> Tr. at 47:18-48:10 (Bienvenu).  It also emphasized that, with respect to the exhibits, it had been unable to obtain copies of the transcripts and that Crabtree provided only select excerpts of the transcripts.  <u>See</u> Tr. at 49:1-12 (Bienvenu).

## <u>LAW REGARDING RULE 12(b)(6)</u>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007); <u>Smith v. United States</u>, 561 F.3d 1090, 1097 (10th Cir. 2009); <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels

and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.

Ashcroft v. Iqbal, 556 U.S. 662, 674 (2009).  "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 674

(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise

a right to relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)."  Bell Atl. Corp v. Twombly, 550 U.S. at 545 (citation

omitted).  To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that,

if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v.

Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial

plausibility when the pleaded factual content allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 665 (citing Bell

Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some

plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the

complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of

mustering factual support for these claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d

1174, 1177 (10th Cir. 2007).  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct,
> much of it innocent, then the plaintiffs "have not nudged their claims across the line
> from conceivable to plausible."  The allegations must be enough that, if assumed
> to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly,

550 U.S. at 570).

## LAW REGARDING STATUTES OF LIMITATIONS

"Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule

12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'"  Torrez v. Eley, No. 09-1464, 2010 U.S. App. LEXIS 9997, at *6 (10th Cir. May 17, 2010)(quoting Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).  Accord Lee v. Rocky Mountain UFCW Unions & Emp's Trust Pension Plan, No. 92-1308, 1993 U.S. App. LEXIS 30478, at *1 (10th Cir. Nov. 23, 1993)("Because the critical dates appeared plainly on the face of [plaintiff's] complaint, we conclude that the statute of limitations defense was properly raised and resolved in the Rule 12(b) context.").  When a party has asserted a statute of limitations issue in a rule 12(b)(6) motion, a court accepts all well-pleaded factual allegations in the complaint as true and views them in the light most favorable to the plaintiff to determine whether the statute of limitations has run.  See Sunrise Valley, LLC v. Kempthorne, 528 F.3d 1251, 1254 (10th Cir. 2008).  The statute of limitations for a breach-of-contract claim, under New Mexico law, is six years.  See N.M.S.A. 1978, § 37-1-3 ("Those founded upon any bond, promissory note, bill of exchange, or other contract in writing, or upon any judgment of any court not of record, within six years.").  The statute of limitations for fraud, under New Mexico law, is four years.  See N.M.S.A. 1978, § 37-1-4 ("Those founded upon accounts and unwritten contracts; those brought . . . for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four years.").

New Mexico applies the "discovery rule," which means that the statute of limitations period "begins to run when the claimant has knowledge of sufficient facts to constitute a cause of action." Gerke v. Romero, 148 N.M. 367, 371, 237 P.3d 111, 115 (Ct. App. 2010).  "The discovery rule provides that the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." Williams v. Stewart, 137 N.M. 420, 424, 112 P.3d 281, 285 (Ct. App. 2005).  Accord Eoff v. N.M. Corr. Dep't, Nos. 10-0598, 10-0599, 10-0600, 2010 WL

5477679, at *18 (D.N.M. Dec. 20, 2010)(Browning, J.); <u>Gose v. Bd. of Cnty. Comm'rs of Cnty. of McKinley</u>, 727 F.Supp.2d 1256, 1264 (D.N.M. 2010)(Browning, J.)("Specifically, [the] statute of limitations commences when an 'injury manifests itself and is ascertainable, rather than when the wrongful or negligent act occurs.'").  New Mexico law, under principles of equitable estoppel, also recognizes the doctrine of fraudulent concealment as a means of tolling a statute of limitations.  <u>See Garcia ex rel. Garcia v. La Farge</u>, 119 N.M. 532, 893 P.2d 428, 432 (1995).  <u>See also Ballen v. Prudential Bache Sec., Inc.</u>, 23 F.3d 335, 337 (10th Cir. 1994).  A party seeking to toll a statute of limitations through this doctrine must prove that: (i) the other party engaged in conduct amounting to intentional false representation or concealment of material facts; (ii) the injured party reasonably relied on the other party and the concealment was successful; and (iii) the injured party did not know, and through the exercise of reasonable diligence, could or should not have known the true facts giving rise to a cause of action.  <u>See Cont'l Potash, Inc. v. Freeport-McMoran, Inc.</u>, 115 N.M. 690, 858 P.2d 66, 74 (1993); <u>Kern ex rel. Kern v. St. Joseph Hosp., Inc.</u>, 102 N.M. 452, 697 P.2d 135, 139 (1985).

### RELEVANT LAW REGARDING PLEADING ALLEGATIONS OF FRAUD

A plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Fraud claims, however, must meet more stringent standards.  <u>See</u> Fed. R. Civ. P. 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, and direct, . . . and to be construed as to do substantial justice.'"  <u>Schwartz v. Celestial Seasonings, Inc.</u>, 124 F.3d 1246, 1252 (10th Cir. 1997).

"With respect to rule 9(b)'s scope, a court should require parties to plead a cause of action with particularity when that cause of action contains allegations grounded in fraud." Two Old Hippies, LLC v. Catch the Bus, LLC, 784 F.Supp.2d 1200, 1207 (D.N.M. 2011)(Browning, J.)(citing 2 J. Moore, J. Parness & J. Smith, Moore's Federal Practice § 9.03(1)(d), at 9-20 (3d ed. 2008)). On the other hand, a plaintiff may plead claims based on negligent or innocent misrepresentations, to the extent those claims do not require proof of fraud, in accordance with the more relaxed standards of rule 8(a). See Tricontinental Indus., Ltd. v. Pricewaterhouse Coopers, LLP, 475 F.3d 824, 833 (7th Cir. 2007)(recognizing that rule 9(b)'s heightened pleading standard does not apply to negligent-misrepresentation claim); Gen. Elec. Capital Corp. v. Posey, 415 F.3d 391, 395-96 (5th Cir. 2005)(concluding that negligent-misrepresentation claim needs only to satisfy rule 8(a)'s notice pleading standard); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104-05 (9th Cir. 2003)("Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."); Carl Kelley Const. LLC v. Danco Techs, 656 F.Supp.2d 1323, 1346 (D.N.M. 2009)(Browning, J.)(citing City of Raton v. Ark. River Power Auth., 600 F.Supp.2d at 1142-44, 1153)("[U]nlike with fraudulent misrepresentation, rule 8's notice pleading standard governs [negligent misrepresentations].").

"The primary motives that animate rule 9(b) help illuminate the reason for limiting the rule's reach to claims grounded in fraud." S2 Automation LLC v. Micron Tech., No. 11-0884, 2012 WL 843706, at *6 (D.N.M. Mar. 5, 2012)(Browning, J.). First, the requirement of pleading with particularity protects defendants' reputations from the harm attendant to accusations of fraud or dishonest conduct. See United States ex rel. Harrison v. Westinghouse Savannah River Co., 353 F.3d 908, 921 (4th Cir. 2003)("Rule 9(b) protects defendants from harm to their goodwill and reputation." (internal quotation marks omitted)); Guidry v. Banks of LaPlace, 954 F.2d 278, 288 (5th

Cir. 1992)("[The particularity requirement] stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation."). Second, the requirement to plead with particularity puts defendants on notice of the allegedly fraudulent conduct so that they can formulate a defense. See United States ex rel. Harrison v. Westinghouse Savannah River Co., 353 F.3d at 921. A related goal of rule 9(b) is to prevent plaintiffs from tagging on specious fraud claims to their pleadings in an attempt "to induce advantageous settlements or for other ulterior purposes." Banker's Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992).

The Tenth Circuit has fleshed out the components necessary to a successful rule 9(b) pleading. In Sheldon v. Vermonty, 246 F.3d 682, 2000 WL 1774038 (10th Cir. 2000)(unpublished table decision), the Tenth Circuit held that the plaintiff had alleged with sufficient particularity a violation of the Securities Exchange Act of 1934. See 2000 WL 1774038, at *4. The Tenth Circuit concluded that the complaint

> adequately met Rule 9(b) requirements. First, as the district court acknowledged, the Complaint alleged misrepresentations with background information as to date, speaker, and the medium of communication. . . . Second, certain of the alleged misrepresentations involved profitable expectations arising from an unowned and inoperable meat-packing plant, a nonexistent lumber company, and fabricated contracts. Accepting Sheldon's allegations as true, these are patently false statements of present fact. The district court erred in determining they were mere conclusory allegations of falsity and in characterizing them as fraud by hindsight. . . . Third, the allegations of scienter were sufficient. In securities fraud cases, although speculation and conclusory allegations will not suffice, great specificity is not required if the plaintiff alleges enough facts to support a strong inference of fraudulent intent.

2000 WL 1774038, at *5 (citations omitted)(internal quotation marks omitted). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc., 232 F.3d 902, 2000 WL

1595976, at * 3 (10th Cir. 2000)(unpublished table decision).  "To survive a motion to dismiss, an allegation of fraud must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  Midgley v. Rayrock Mines, Inc., 374 F.Supp.2d 1039, 1047 (D.N.M. 2005)(Browning, J.)(quoting Schwartz v. Celestial Seasonings, Inc., 124 F.3d at 1252).  "On the other hand, rule 9(b) does not require specific knowledge regarding the defendant's state of mind."  Midgley v. Rayrock Mines, Inc., 374 F.Supp.2d at 1047.

## RELEVANT NEW MEXICO LAW REGARDING IMPLIED EMPLOYMENT CONTRACTS

In New Mexico, "an employment contract is for an indefinite period and is terminable at the will of either party unless the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise."  Hartbarger v. Frank Paxton Co., 115 N.M. 665, 668, 857 P.2d 776, 779 (1993)(citation omitted).  At-will employment relationships "can be terminated by either party at any time for any reason or no reason, without liability."  Hartbarger v. Frank Paxton Co., 115 N.M. at 668, 857 P.2d at 779.  "New Mexico courts have recognized two additional exceptions to the general rule of at-will employment: wrongful discharge in violation of public policy (retaliatory discharge), and an implied contract term that restricts the employer's power to discharge."  Hartbarger v. Frank Paxton Co., 115 N.M. at 668, 857 P.2d at 779.

A promise, or offer, that supports an implied contract might be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct.  See Newberry v. Allied Stores, Inc., 108 N.M. 424, 426, 773 P.2d 1231, 1233 (1989)(citation omitted).  "Under New Mexico law, a personnel

manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlined." See Newberry v. Allied Stores, Inc., 108 N.M. at 427, 773 P.2d at 1234. The question whether an employment relationship has been modified is a question of fact. See Lukoski v. Sandia Indian Mgmt. Co., 106 N.M. 664, 666, 748 P.2d 507, 509 (1988). "An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." Hartbarger v. Frank Paxton Co., 115 N.M. at 672, 857 P.2d at 783. If the alleged employer's promise is not sufficiently explicit, the courts will not find an implied contract. See Hartbarger v. Frank Paxton Co., 115 N.M. at 669, 857 P.2d at 780.

> Evidence relevant to this factual decision includes the language used in the personnel manual as well as the employer's course of conduct and oral representations regarding it. We do not mean to imply that all personnel manual[s] will become part of employment contracts. Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason. Such actions instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual. However, if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it. Having announced a policy, the employer may not treat it as illusory.

Lukoski v. Sandia Indian Mgmt. Co., 106 N.M. at 666-67, 748 P.2d at 509-10 (citation omitted).

"Whether an employer's words and conduct support a reasonable expectation on the part of employees that they will be dismissed only in accordance with specified procedures or for specified reasons generally is a question of fact for the jury." Meland v. E. N.M. Med. Ctr., 131 N.M. 65, 69, 33 P.3d 285, 289 (2001). "[B]ecause an employee's expectation based on an employer's words or conduct must meet a certain threshold of objectivity, an employer may be entitled to judgment as

a matter of law if the employee's expectations are not objectively reasonable." West v. Wash. Tru

Solutions, LLC, 147 N.M. 424, 426, 224 P.3d 651, 653 (Ct. App. 2009).  In deciding whether to

grant summary judgment, the question is whether a reasonable jury could find that the words and

conduct support an objectively reasonable expectation that the employees would be dismissed only

in accordance with specified procedures and for specified reasons.  See Meland v. E. N.M. Med.

Ctr., 131 N.M. at 69, 33 P.3d at 289.  "[E]ven where a personnel manual purports to disclaim any

intentions of forming contractual obligations enforceable against an employer, a fact finder may still

look to the totality of the parties' statements and actions, including the contents of a personnel

manual, to determine whether contractual obligations were created." Beggs v. City of Portales, 146

N.M. 372, 377, 210 P.2d 798, 803 (2009).

## LAW REGARDING MOTIONS TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedures provides:

> (f)    **Motion to Strike.**  The court may strike from a pleading an insufficient
> defense or any redundant, immaterial, impertinent, or scandalous matter.  The
> court may act:
>
>    (1)   on its own; or
>
>    (2)   on motion made by a party either before responding to the
> pleading or, if a response is not allowed, within 21 days after
> being served with the pleading.

Fed. R. Civ. P. 12(f).  Professors Charles Wright and Arthur Miller have recognized, however, that

such motions are not favored and, generally, should be denied:

> The district court possesses considerable discretion in disposing of a Rule 12(f)
> motion to strike redundant, impertinent, immaterial, or scandalous matter.  However,
> because federal judges have made it clear, in numerous opinions they have rendered
> in many substantive contexts, that Rule 12(f) motions to strike on any of these
> grounds are not favored, often being considered purely cosmetic or "time wasters,"
> there appears to be general judicial agreement, as reflected in the extensive case law
> on the subject, that they should be denied unless the challenged allegations have no

possible relation or logical connection to the subject matter of the controversy . . . .

.

5C C. Wright & A. Miller, <u>Federal Practice & Procedure</u> § 1382, at 433-36 (3d. ed. 2004)(footnotes

omitted).  <u>Accord</u> <u>Burget v. Capital W. Sec., Inc</u>., No. CIV-09-1015-M, 2009 WL 4807619, at *1

(W.D. Okla. Dec. 8, 2009)(Miles-LaGrange, C.J.)(citing <u>Scherer v. U.S. Dep't of Educ</u>., 78 F.App'x

687, 689 (10th Cir. 2003)(unpublished))("While motions to strike are generally disfavored, the

decision to grant a motion to strike is within the discretion of the court.").

　　"Allegations will not be stricken as immaterial under this rule unless they have no possible

bearing on the controversy."  <u>Estate of Gonzales v. AAA Life Ins. Co.</u>, No. 11-0486, 2012 WL

1684599, at *5 (D.N.M. May 8, 2012)(Browning, J.)(quoting <u>Sai Broken Arrow C, LLC v. Guardian

Emergency Vehicles, Inc.</u>, 2010 WL 132414, at *5).  "The Court must be convinced that there are

no questions of fact, that any questions of law are clear and not in dispute, and that under no set of

circumstances could the defenses succeed."  <u>Friends of Santa Fe Cnty. v. LAC Minerals, Inc.</u>, 892

F.Supp. 1333, 1343 (D.N.M. 1995)(Hansen, J.)(quoting <u>Carter-Wallace, Inc. v. Riverton Lab., Inc.</u>,

47 F.R.D. 366, 368 (S.D.N.Y. 1969))(internal quotation marks omitted).  Professors Wright and

Miller have also commented on what constitutes "immaterial" matter in the context of a motion to

strike.  "'Immaterial' matter is that which has no essential or important relationship to the claim for

relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with

and descriptive of that which is material."  5C C. Wright & A. Miller, <u>supra</u> § 1382 (footnotes

omitted).

　　Moreover, "[o]nly material included in a 'pleading' may be the subject of a motion to strike,

and courts have been unwilling to construe the term broadly.  Motions, briefs, . . . memoranda,

objections, or affidavits may not be attacked by the motion to strike."  <u>Dubrovin v. Ball Corp.

Consol. Welfare Ben. Plan for Emps.</u>, No. 08-CV-00563-WYD-KMT, 2009 WL 5210498, at *1 (D.

Colo. Dec. 23, 2009)(Daniel, J.).  Accord Ysais v. N.M. Judicial Standard Comm'n, 616 F.Supp.2d

1176, 1184 (D.N.M. 2009)(Browning, J.)(citing Searcy v. Soc. Sec. Admin., 956 F.2d 278, 1992 WL

43490, at *1, *4 (10th Cir. 1998)(unpublished table decision))("Generally . . . motions, briefs, and

memoranda may not be attacked by a motion to strike.").  "The Federal Rules of Civil Procedure

define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party

complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'"

Ysais v. N.M. Judicial Standard Comm'n, 616 F.Supp.2d at 1184 (quoting Fed. R. Civ. P. 7(a)).

       "Striking a pleading or part of a pleading is a drastic remedy and because a motion to strike

may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored."

Estate of Gonzales v. AAA Life Ins. Co., 2012 WL 1684599, at *5 (quoting Sai Broken Arrow C.,

LLC v. Guardian Emergency Vehicles, Inc., No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5

(N.D. Okla. Jan. 8, 2010)(Egan, J.))(internal quotation marks omitted)).  "The exception to this

principle is that a Court may 'choose to strike a filing that is not allowed by local rule, such as a

surreply filed without leave of court.'"  Ysais v. N.M. Judicial Standard Comm'n, 616 F.Supp.2d

at 1184 (citing In re Hopkins, 162 F.3d 1173, 1998 WL 704710, *3 n.6 (10th Cir. 1998)(unpublished

table decision)).

## ANALYSIS

       The Court will deny the Motion to Strike, because the exhibits attached to the Motion to

Dismiss are not pleadings within the meaning of rule 12(f), because the materials are not irrelevant,

and because the parties agreed at the hearing that the Court could deny the motion if it considered

the arguments in its analysis of the Motion to Dismiss.  The Court will deny the Motion to

Consolidate because there is a motion to remand pending in No. CIV 12-0310, and the Court cannot

at this point determine that both cases are properly before the Court; the Court should not

consolidate or do anything on a case until it determines jurisdiction and whether a case is properly in federal court.  The Court will also deny the Motion to Dismiss because: (i) the statute of limitations does not bar the Amended Complaint; (ii) Great American has alleged the existence of a contract; and (iii) Great American may subrogate against Crabtree.

## I.    <u>THE COURT WILL DENY THE MOTION TO STRIKE.</u>

Generally, "[o]nly material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.  Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike."  <u>Dubrovin v. Ball Corp. Consol. Welfare Ben. Plan for Emps.</u>, 2009 WL 5210498, at *1.  <u>Accord</u> <u>Ysais v. N.M. Judicial Standard Comm'n</u>, 616 F.Supp.2d at 1184.  "The Federal Rules of Civil Procedure define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'"  <u>Ysais v. N.M. Judicial Standard Comm'n</u>, 616 F.Supp.2d at 1184 (quoting Fed. R. Civ. P. 7(a)).  At the July 5, 2012 hearing, Great American stated that it did not oppose the Court denying the Motion to Strike, but considering those arguments with respect to the Motion to Dismiss.  <u>See</u> Tr. at 15:14-16:1 (Court, Bienvenu).  Moreover, the Court cannot say that the materials are insufficient, redundant, immaterial, impertinent, or scandalous.  Indeed, the documents appear to be highly relevant to this statute-of-limitations issue.  There is no sound reason to strike these documents from the record, when, if Great American wanted the Court to convert the Motion to Dismiss into a motion for summary judgment, it would do so.  The best course is to not consider the materials, if rule 12(b)(6) precludes their consideration, not strike them from the record, when it is likely that they will reappear soon.  If the Court struck from the record everything it did not consider on a motion, it would spend a lot of time polishing the record.  Also, with the Court being paperless and

everything appearing on CM/ECF, it is unclear what the procedural difference in the modern computer world is between striking some information and ignoring it.  Because Motions to Strike are generally appropriate only with respect to pleadings and because Great American does not object, the Court will deny the Motion to Strike.  The Court will however consider the arguments made in the Motion to Strike when considering the Motion to Dismiss.

## II.   THE COURT WILL DENY THE MOTION TO CONSOLIDATE WITHOUT PREJUDICE TO THE DEFENDANTS RENEWING THE MOTION.

Rule 42 of the Federal Rules of Civil Procedure provides that, "[i]f actions before the court involve a common question of law of fact, the court may . . . consolidate the actions."  Fed. R. Civ. P. 42(a)(2).   "[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties or make those who are parties in one suit parties in another."  Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933).   Accord Chaara v. Intel Corp., 410 F.Supp.2d 1080, 1090 (D.N.M. 2005)(Browning, J.).  The United States Court of Appeals for the Fifth Circuit has held that a district court abused its discretion when it consolidated cases before deciding a motion to remand and noted that several of the cases were removed in an untimely manner.  See In re Excel Corp., 106 F.3d 1197, 1201 (5th Cir. 1997).  The Fifth Circuit found that, "[b]y considering these eight cases as one single cause after the consolidation order, the district court adversely affected the rights of the defendants by failing to separately determine the jurisdictional premise upon which each stands and the propriety of removal or remand resulting therefrom."  In re Excel Corp., 106 F.3d at 1201. Similarly, the United States Court of Appeals for the Ninth Circuit has held that "Rule 42 only applies to cases that are properly before the same court."  Or. Egg Producers v. Andrew, 458 F.2d 382, 383 (9th Cir. 1972).  In Employers Insurance of Wausau v. Crown Cork & Seal Co., Inc., 905

F.2d 42 (3d Cir. 1990), the United States Court of Appeals for the Third Circuit held that, because the grant of a stay "amounts to the exercise of dominion over this matter," the district court was bound to first consider the defendant's challenge to diversity jurisdiction.  905 F.2d at 45.[4]

The Court does not believe it is appropriate to consolidate No. CIV 12-0310 with this case, while a motion to remand remains pending in that case.  The Fifth Circuit, when dealing with similar circumstances on appeal, held that the district court needed to address the motions to remand in the cases to be consolidated first to determine whether they were properly in federal court.  See In re Excel Corp., 106 F.3d at 1201.  This rule included motions to remand which raised only procedural issues.  See In re Excel Corp., 106 F.3d at 1201 ("We . . . vacate the consolidation and remand order, and instruct the district court to consider each plaintiffs' motion to remand on a cases by case basis, determining in each case . . . the issues of diversity of citizenship, federal question, fraudulent joinder, timeliness of remand motions and non-removability of workers' compensation claims.").  Other district courts addressing this issue have similarly held that it was inappropriate to consolidate two cases where one of the cases might end up before another adjudicative body.  In Lopez v. Ace Cash Express, Inc., Nos. CV11-04611, CV11-07116, 2012 WL 1655720 (C.D. Cal. May 4, 2012), the United States District Court for the Central District of California recognized that consolidation was not appropriate under rule 42, where it had compelled arbitration in one of the cases.  See 2012 WL 1655720, at *10.  In Williams v. Ameriquest Mortgage, Co., No. , 2007 WL 2254416 (S.D. Ala. Aug. 2, 2007), the United States District Court for the Southern District of Alabama stated that a motion to consolidate was premature, because a motion to remand had been filed in one of the cases

---

[4]In No. CIV 12-0310, the Court issued a Minute Order directing the parties to "explain why the Court may stay or consolidate the case without deciding the pending motion to remand in light of the discussion in Employers Insurance of Wausau v. Crown Cork & Seal Co., 905 F.2d 42, 45 (3d Cir. 1990)."  Minute Order, filed July 27, 2012 (Doc. 16).

to be consolidated.  See 2007 WL 2254416, at *2.  That court held that: "This Court expresses no opinion as [to] the merits of WM Specialty's Motion to Remand, which is pending before Judge Dubose in 07-0480; however, it is clearly premature to even consider consolidating 07-0480 with 07-0325 until after Judge DuBose has resolved the jurisdictional issues pertaining to the propriety of removal." Williams v. Ameriquest Mortg. Co., 2007 WL 2254416, at *2.  The Court concludes that consolidation, at this point, would not fulfill the administrative efficiency goals of rule 42, because No. CIV 12-0310 could be remanded to state court.  At the July 5, 2012 hearing, the parties agreed that it was acceptable for the Court to grant the Motion to Consolidate only if the motion to remand in case number 12-0310 is denied.  See Tr. at 14:15-15:13 (Court, Bienvenu, Foster, Singer, Garcia).

Because the Court has not yet decided the motion to remand in case number 12-0310, it would be inappropriate and premature for the Court to consolidate these cases.  Granting the Motion to Consolidate would achieve no judicial economy, if the Court remands No. CIV 12-0310, and it is only appropriate to consolidate cases under rule 42 when both are properly before the Court.  See U.S. for Use of Owens-Corning Fiberglass Corp. v. Brandt Constr. Co., 826 F.2d at 647 ("But Rule 42(a) requires that both actions be 'pending before the court' and an improperly removed action does not meet this criterion."); Or. Egg Producers v. Andrew, 458 F.2d at 383.  Accordingly, the Court will deny the Motion to Consolidate without prejudice to the Defendants renewing this motion should the Court deny the motion to remand in No. CIV 12-0310.

## III.   THE APPLICABLE STATUTE OF LIMITATIONS DOES NOT BAR THE AMENDED COMPLAINT.

Crabtree asserts that, "[w]hile the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff

has the burden of establishing a factual basis for tolling the statute."  Motion to Dismiss at 2.  He argues that the "last alleged date of fraud is December 20, 2007," and that the Complaint was filed December 23, 2011, outside of the four-year statute of limitations for fraud.  Motion to Dismiss at 3.  Crabtree contends that St. Vincent Hospital knew or should have known of the alleged fraud in 2003, or by 2005 or 2006.  See Motion to Dismiss at 5.  He attaches and cites the Concerned Letter, and excerpts of interviews with Sanger, Dittrich, and Doxtator.  Crabtree argues that he is only required to show inquiry notice and that, by 2006, St. Vincent Hospital was on actual notice, such that the statute of limitations bars the Amended Complaint.  See Motion to Dismiss at 15.  Great American argues that, when deciding a motion under rule 12(b)(6), the Court must accept as true the Complaint's factual allegations.  See MTD Response at 4 (citing Bangerter v. Orem City Corp., 46 F.3d 1491, 1502 (10th Cir. 1995)).  It further asserts that, in ruling on a rule 12(b)(6) motion, the Court "may consider only the complaint itself, and a few other limited categories of materials including exhibits attached to the complaint, documents the complaint incorporates by reference, and materials of which the court may take judicial notice."  MTD Response at 5 (citing Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Great American contends that the documents that Crabtree attached are unauthenticated, unsworn, and incomplete.  See MTD Response at 10.  It argues that the Complaint establishes that Crabtree's fraudulent conduct was not discovered until March 2008, within the four-year limitations period.  See MTD Response at 12.

## A.   THE COURT MAY NOT CONSIDER THE EXHIBITS ATTACHED TO THE MOTION TO DISMISS.

Generally, the sufficiency of a complaint must rest on its contents alone.  See Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010); Gossett v. Barnhart, 139 F.App'x 24, 24 (10th Cir. 2005)(unpublished)("In ruling on a motion to dismiss, the district court is limited to the facts pled

in the complaint."). Emphasizing this point, the Tenth Circuit, in <u>Carter v. Daniels</u>, 91 F.App'x 83

(10th Cir. 2004)(unpublished), stated: "When ruling on a Rule 12(b)(6) motion, the district court

must examine only the plaintiff's complaint. The district court must determine if the complaint

alone is sufficient to state a claim; the district court cannot review matters outside of the complaint."

91 F.App'x at 85. There are three limited exceptions to this general principle: (i) documents that

the complaint incorporates by reference, <u>see</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S.

308, 322 (2007); (ii) "documents referred to in the complaint if the documents are central to the

plaintiff's claim and the parties do not dispute the documents' authenticity," <u>Jacobsen v. Deseret</u>

<u>Book co.</u>, 287 F.3d 936, 941 (10th Cir. 2002); and (iii) "matters of which a court may take judicial

notice," <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. at 322. In <u>Gee v. Pacheco</u>, 627 F.3d

1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the

district court cited portions of those motions in granting the [motion to dismiss]." 627 F.3d at 1186.

The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did

not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's

factual assertions and effectively convert the motion to one for summary judgment." <u>Gee v.</u>

<u>Pacheco</u>, 627 F.3d at 1186-87. In other cases the Tenth Circuit has emphasized that, "[b]ecause the

district court considered facts outside of the complaint, however, it is clear that the district court

dismissed the claim under Rule 56(c) and not Rule 12(b)(6)." <u>Nard v. City of Okla. City</u>, 153

F.App'x 529, 534 n.4 (10th Cir. 2005)(unpublished). In <u>Douglas v. Norton</u>, 167 F.App'x 698 (10th

Cir. 2006)(unpublished), the Tenth Circuit addressed an untimely filed charge with the Equal

Employment Opportunity Commission -- which the Court analogized to a statute of limitations --

and found that, because the requirement was not jurisdictional, the district court should have

analyzed the question under rule 12(b)(6) and "because the district court considered evidentiary

materials outside of Douglas' complaint, it should have treated Norton's motion as a motion for summary judgment." 167 F.App'x at 704-05.

Crabtree argues that, in Shields v. Boettcher Investment Corp. and Sterlin v. Biomune Systems, the Tenth Circuit did not apply the general rule and instead considered evidence outside of the complaint. In Shields v. Boettcher Investment Corp., a 1993 unpublished table decision, the Tenth Circuit stated: "The district court has thoroughly analyzed the various items of evidence available to plaintiff which should have tipped him off about Boettcher's failings. We will not repeat that exercise here." 1993 WL 482902, at *3. The Tenth Circuit also stated:

> While we note that the question of when a plaintiff discovered or should have discovered the existence of a claim is usually one of fact, . . . there are situations where, as here, the evidence before the court "clearly and convincingly persuade[s] the trial judge that plaintiff in the exercise of reasonable diligence would have discovered the fraud at such a time as to bar the action."

Shields v. Boettcher Inv. Corp, 1993 WL 482902, at *1 (alteration in original). In that case, however, the Tenth Circuit did not explain what evidence the district court had examined, whether the evidence was outside of the complaint, or whether the evidence fell into one of the three exceptions. Furthermore, the Tenth Circuit did not hold that it was creating an exception to the general rule for statute-of-limitations questions. In Sterlin v. Biomune Systems, a 1998 case, the Tenth Circuit affirmed a district court decision which dismissed a complaint based on statute-of-limitations grounds after determining that an article published in Barron's gave the plaintiff inquiry notice of the fraud. See Sterlin v. Biomune Sys., 154 F.3d at 1204. Neither the Tenth Circuit nor the district court discussed, however, why the district court was permitted to consider the article or whether it was evidence outside of the complaint. In both Shields v. Boettcher Investment Corp. and Sterlin v. Biomune Systems, the evidence on which the Tenth Circuit relied could have been referenced or otherwise fallen into one of the exceptions to the general rule. Specifically, the

<u>Barron's</u> article might have been a document of which the district court could take judicial notice. <u>See</u> <u>e.g.</u> <u>Von Saher v. Norton Simon Museum of Art</u>, 592 F.3d 954, 960 (9th Cir. 2010)(taking judicial notice of magazine articles about paintings at issue in the case as evidence "of what information was in the public realm at the time"). Given that these cases do not discuss the general rule concerning evidence outside of the complaint or explain why the district courts were permitted to considered the evidence at issue, the Court does not believe that these cases establish that the Court may consider the evidence at issue in this case. The more recent and more established authority demonstrates that, "[w]hen ruling on a Rule 12(b)(6) motion, the district court must examine <u>only</u> the plaintiff's complaint." <u>Carter v. Daniels</u>, 91 F.App'x at 85 (emphasis added).

Because the documents which Crabtree submitted do not fall within one of the three exceptions to the general rule, the Court may not consider the exhibits unless the Court converts the motion into one for summary judgment. First, the Amended Complaint does not incorporate by reference the Concerned Letter and the interview transcript excerpts. Second, the Amended Complaint does not refer to the Concerned Letter or the interview transcripts. Finally, these documents are not subject to judicial notice. Rule 201 of the Federal Rules of Evidence provides that a court may judicially notice a fact that is not subject to reasonable dispute, because it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). Crabtree has not argued that these documents fall within rule 201, but, in any case, the Court determines that they are not appropriate subjects for judicial notice. Because Crabtree refers not only to the fact of that these interviews took place, but what was said in the course of the interviews, those facts are subject to reasonable dispute. Those facts are subject to reasonable dispute, because they are unsworn statements and because Great American has not seen the entirety of the interview

transcripts.  Great American can and does reasonably question the sources of the interviews, because it does not have the entirety of the transcripts and has been unable to obtain a copy of the transcripts. With respect to the letter, the facts to which Crabtree wishes the Court to look are also subject to reasonable dispute, because the Concerned Letter is undated and unsigned, and because there is no evidence before the Court that St. Vincent Hospital received the Concerned Letter.  Accordingly, it is not appropriate for the Court to take judicial notice of the facts in the Concerned Letter or in the interview transcript excerpts.

Because the documents which Crabtree has submitted do not fit within one of the three exceptions to the general rule that the Court may not look at documents outside of the complaint when deciding a motion to dismiss, the Court will not examine the Concerned Letter or the interview transcript excerpts in deciding the Motion to Dismiss.[5]

### B.   TAKING THE ALLEGATIONS IN THE COMPLAINT AS TRUE, THE CAUSES OF ACTION DID NOT ACCRUE UNTIL MARCH 2008, AND THE STATUTE OF LIMITATIONS DOES NOT BAR THEM.

"[F]or the purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  Smith v. United States, 561 F.3d at 1098.  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for relief may be granted."  Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)(internal quotation marks omitted).  Under New Mexico law, the statute of limitations for breach of contract is six years.

---

[5]The Court notes that, at the hearing, no party wished for the Court to convert the Motion to Dismiss into a motion for summary judgment.  The Court stated that it did not see that Crabtree was asking the Court to convert the motion into a motion for summary judgment, and Crabtree agreed that the Court was stating his position correctly.  See Tr. at 17:18-2 (Court, Garcia).

See N.M.S.A. 1978, § 37-1-3 ("Those founded upon any bond, promissory note, bill of exchange, or other contract in writing, or upon any judgment of any court not of record, within six years."). The statute of limitations for fraud, under New Mexico law, is four years. See N.M.S.A. 1978, § 37-1-4 ("Those founded upon accounts and unwritten contracts; those brought . . . for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four years.").   New Mexico applies the "discovery rule," which means that the statute of limitations period "begins to run when the claimant has knowledge of sufficient facts to constitute a cause of action." Gerke v. Romero, 148 N.M. 367, 371, 237 P.3d 111, 115 (Ct. App. 2010).  "The discovery rule provides that the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." Williams v. Stewart, 137 N.M. 420, 424, 112 P.3d 281, 285 (Ct. App. 2005).  Accord Eoff v. N.M. Corrections Dep't, 2010 WL 5477679, at *18; Gose v. Bd. of Cnty. Comm'rs of Cnty. of McKinley, 727 F.Supp.2d 1256, 1264 (D.N.M. 2010)(Browning, J.)("Specifically, [the] statute of limitations commences when an 'injury manifests itself and is ascertainable, rather than when the wrongful or negligent act occurs.'").

Great American asserts that, "[w]ithin months of his initial hire by St. Vincent Hospital until his termination for cause on March 13, 2008, Defendant Crabtree and the other Defendants engaged in a pervasive scheme by which Defendant Crabtree and the other Defendants misappropriated money from St. Vincent Hospital."  Amended Complaint ¶ 16, at 6.  Great American further alleges that St. Vincent Hospital's "losses were not discovered by St. Vincent Hospital until March, 2008." Amended Complaint ¶ 41, at 14.  Great American argues that the statute of limitations did not begin to accrue until March 2008, when the fraud was first discoverable.   See Tr. at 34:18-35:4 (Bienvenu).  The United States Court of Appeals for the Ninth Circuit, addressing dismissal of a complaint where the plaintiff alleged that a claim was not discoverable until 2001, within the statute-

of-limitations period, expressed skepticism that the statute of limitations barred the plaintiff's claims.  See Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1052 n. 4 (9th Cir. 2004)("Given this allegation of delayed effect, and our well-known rules requiring us to take as true plaintiff's allegations, the panel is skeptical as to whether the statute of limitations bars Appellant's premium creation and deprivation claim.").  In another case, the Ninth Circuit noted that the district court failed to accept as true the facts alleged in the complaint, where the face of the complaint alleged an accrual date of March 15, 1994, and the district court found that the breach of contract claim accrued on January 31, 1994.  See Flanagan v. Fed. Sav. & Loan Ins. Corp., 81 F.3d 168, 1996 WL 157508, at *3 (9th Cir. 1996)(unpublished table decision).  The Ninth Circuit then reversed the district court's dismissal of the breach-of-contract claim based on the statute of limitations.  See Flanagan v. Fed. Sav. & Loan Ins. Corp., 1996 WL 157508, at *3. Similarly, the Court, taking the allegations of the Amended Complaint as true, must accept that the fraud and misappropriations which form the basis of the Amended Complaint were not discoverable until March 2008.  It is because the Court must accept as true the allegations in the Amended Complaint that courts have recognized that there "is an inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense."  Richards v. Mileski, 662 F.2d 65, 73 (D.C. Cir. 1981).  Accordingly, the Court must accept as true the allegation that the claims were not discoverable until March 2008.  The fraud allegations have a four-year statute of limitations, see N.M.S.A. 1978, § 37-1-4, and the breach-of-contract claim has a six-year statute of limitations, see N.M.S.A. 1978, § 37-1-3.  Because the statute of limitations accrued in March 2008, and the Complaint was filed in December 2011, all of the counts alleged satisfy the applicable statutes of limitations.  The Court will therefore not dismiss the Amended Complaint under rule 12(b)(6) as barred by the statute of limitations.

### C.   ALTHOUGH UNNECESSARY TO SATISFY THE STATUTE OF LIMITATIONS, GREAT AMERICAN HAS FAILED TO ADEQUATELY ALLEGE FRAUDULENT CONCEALMENT.

In the Amended Complaint, Great American alleges:

39.    In furtherance of the scheme to defraud St. Vincent Hospital, Defendants Crabtree, Mares, Michael Gallegos and Steven R. Gallegos all participated in a meeting set up by Defendant Crabtree for the purpose of attempting to convince St. Vincent Hospital's compliance officer of the legitimacy of Defendant Michael & Associates.  As part of this meeting, a part-time student was flown in from San Antonio to pose, falsely, as an engineer employed by Defendant Michael and Associates.

40.    In furtherance of the scheme to defraud St. Vincent Hospital, Defendant Crabtree excluded knowledgeable St. Vincent Hospital personnel from interacting with the other Defendants in order to minimize the risk of discovery.

Amended Complaint ¶¶ 39-40, at 14.  Crabtree argues that such "bald allegations" of concealment are insufficient to toll the statute of limitations under the doctrine of fraudulent concealment.  MTD at 16 (citing FDIC v. Schuchmann, 224 F.Supp.2d 1332, 1342 (D.N.M. 2002)(Vazquez, J.)).  He contends that the "Plaintiff has pled no specific fact as to how Crabtree prevented hospital personnel from contacting the very vendors they contracted with" and that "Plaintiff has not pled with particularity any aspect of fraudulent concealment."  MTD at 17.  Great American asserts that it has alleged that Crabtree and the other Defendants fraudulently concealed their conduct with sufficient particularity.  See MTD Response at 13-14.

New Mexico law recognizes the doctrine of fraudulent concealment as a means of tolling a statute of limitations. See Garcia ex rel. Garcia v. La Farge, 119 N.M. at 536, 893 P.2d at 432.  A party seeking to toll a statute of limitations through this doctrine must prove that: (i) the other party engaged in conduct amounting to intentional false representation or concealment of material facts; (ii) the injured party reasonably relied on the other party and the concealment was successful; and

-43-

(iii) the injured party did not know, and through the exercise of reasonable diligence, could or should not have known the true facts giving rise to a cause of action.  See Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 115 N.M. at 698, 858 P.2d at 74.  Fraudulent concealment must be specifically pled in accordance with rule 9(b)'s requirements, and broad allegations, "without any particular details regarding time, place, method or content of the alleged fraudulent concealment, fall short of the requirement that the circumstances in all averments of fraud be pled with particularity."  P.R. v. Zavaras, 49 F.App'x 836, 840 (10th Cir. 2002)(unpublished).

Here, Great American's allegations fall short of rule 9(b)'s particularity standard.  Great American has not set forth "the who, what, when, where and how of the alleged fraud," which are required to meet rule 9(b)'s minimum standards.  United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc., 2000 WL 1595976, at * 3.  With respect to paragraph 39, Great American does not allege when the meeting between Crabtree and the other Defendants took place, what was said to convince St. Vincent Hospital that Michael & Associates was a legitimate business, or how this meeting impacted its ability to discover the fraud.  Great American does not allege what representations were made to St. Vincent Hospital staff regarding the student the Defendants brought to the meeting, what his importance was, or why this fraud cover up was successful.  Furthermore, if Great American is arguing that this meeting impaired its ability to uncover the fraud, Great American needed to allege why the cover-up was successful.  See Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 115 N.M. at 698, 858 P.2d at 74 (stating that, to establish fraudulent concealment, a plaintiff must allege that it could not, through reasonable diligence, have uncovered the fraud).  Great American does not explain why the student played such a pivotal role in convincing it of Michael & Associates' legitimacy.  The allegations in paragraph 39 -- that a meeting took place and that the purpose of the meeting was to establish that Michael & Associates

was a legitimate business -- are too vague to establish fraudulent concealment.  See FDIC v. Schuchmann, 224 F.Supp.2d at 1343 ("All that Plaintiff has done is suggest vague evidence of fraudulent concealment . . . .").  The allegations in paragraph 40 similarly fail to allege fraudulent concealment with the necessary specificity.  Great American fails to explain how Crabtree kept St. Vincent Hospital personnel from interacting with the Defendants or give an example of such conduct.  "An allegation of fraud must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" Midgley v. Rayrock Mines, Inc., 374 F.Supp.2d at 1047.  Furthermore, Great American fails to explain how this interference helped Crabtree avoid detection.  Without identifying the means through which Crabtree allegedly concealed his fraud or the time period during which he did so, the Court cannot say that equitable principles demand that the statute of limitations be tolled.  Moreover, without information regarding when these events took place the Court would not be able to pinpoint at what point the statute of limitations should be tolled.

Although the allegations in the Amended Complaint are insufficient to establish fraudulent concealment, because the Court has found that the statute of limitations did not begin to accrue until March 2008, fraudulent concealment is unnecessary to satisfy the statute of limitations. Accordingly, the Court will not dismiss the Amended Complaint on the basis that the statute of limitations has run.

## IV.   THE COURT WILL NOT DISMISS THE BREACH-OF-CONTRACT CLAIM BASED ON A FAILURE TO STATE A CLAIM.

With respect to Count IV, Crabtree argues that this claim fails, because there was no contract with Crabtree, and notes that Great American failed to attach a copy of the alleged contract to the Complaint.  See Motion to Dismiss at 18 & n.14.  Crabtree asserts that he was an at-will employee

and never had a contract with St. Vincent.  See Motion to Dismiss at 18.  Great American argues that Crabtree provides no support for his assertion that he is an at-will employee, but that, in any event, his "status as an 'at-will' employee has no bearing on whether or not he is in breach of a written contract," because being "'at-will' simply means that an employee may be terminated at any time without cause" and because "an employment contract may be implied in fact from a term exhibited in writing in, for example, a personnel policy manual."  MTD Response at 17-18.  It points out that it has specifically alleged that Crabtree's employment was "governed by written employment agreements."  MTD Response at 18.

Crabtree argues that the breach-of-contract claim fails, because there was no contract with Crabtree, and notes that Great American failed to attach a copy of the alleged contract to the Complaint.  See Motion to Dismiss at 18 & n.14.  Professor James Moore has explained, however, that a "contract claim will not be dismissed for failure to attach the contract to the complaint."  2 J. Moore, Moore's Federal Practice, § 10.05[4], at 10-34 (3d ed. 2012).  Federal courts have noted that "[a] plaintiff is not required to attach the subject contract to the complaint or plead its terms verbatim in order to state a claim."  Jones v. Select Portfolio Servicing, Inc., No. 08-972, 2008 WL 1820935, at *4 (E.D.Pa. Apr. 22, 2008)(citing Mayes v. Local 106, Int'l Union Operating Eng'rs, 739 F.Supp. 744, 748 (N.D.N.Y.  1990).  Accord Supermedia LLC v. Kantaras & Andreopoulos, No.  9:11-cv-02328-T-17EAJ, 2012 WL 895444, at *4 (M.D. Fla. Mar. 15, 2012)("Defendants did not present this Court with any caselaw or other authority supporting the proposition that when a complaint alleges claims for breach of express contract it should be dismissed or found insufficient if the plaintiff fails to attach the purported written contracts to the complaint.")(citing Manicini Enters., Inc. v. Am. Express Co., 236 F.R.D. 695, 698 (S.D. Fla. 2006)); Lone Star Indus., Inc. v. Nelstad Material Corp., 811 F.Supp. 147, 148 (S.D.N.Y. 1993)("[M]oreover, notice pleading under

the Fed. R. Civ. P. 8 permits allegations concerning governing documents even if not attached to the complaint."). Accordingly, that Great American has not attached the contract to the Amended Complaint is not dispositive whether there was a contract between St. Vincent Hospital and Crabtree.

Great American asserts that Crabtree's "employment with St. Vincent Hospital was governed by written employment agreements, including St. Vincent's policies and procedures, his job description, his performance expectations, St. Vincent's principles and standards for ethics and compliance, and St. Vincent's standards of performance." Amended Complaint ¶ 15, at 5-6. It further asserts that Crabtree's employment was "governed by the legally enforceable terms and conditions of [employment] set forth in his written agreements" and that these "terms and conditions include the covenant of good faith and fair dealing, pursuant to which Defendant Crabtree was obligated to perform his obligations in good faith, i.e., to act honestly and in accordance with standards of fair dealing under the surrounding circumstances." Amended Complaint ¶ 58, at 17. It alleges that, "[b]y his acts and omissions . . . , Defendant Crabtree breached the terms and conditions of his written employment agreements and the covenant of good faith and fair dealing." Amended Complaint ¶ 58, at 17.

The Honorable Bobby R. Baldock, Senior United States Circuit Judge for the Tenth Circuit, has found that similar allegations establish a contract and are sufficient to survive a motion to dismiss. In McDonald v. Corrections Corp. of Am., 181 F.Supp.2d 1274 (D.N.M. 2002)(Baldock, J.), Judge Baldock found that the plaintiff's allegations that "Plaintiff's employment was governed by an express and implied contract of employment" were "sufficient[ to] plead a breach of contract claim." 181 F.Supp.2d at 1282. In Eoff v. New Mexico Corrections Department, the Court found that the plaintiff had sufficiently alleged the existence of a contract where the plaintiff alleged: (i)

that corrections department employed the plaintiff as a corrections office; and (ii) that he was covered under the State Personnel Act, N.M.S.A. 1978, § 10-9-4.  See 2010 WL 5477679, at *10. The Court found that this information is sufficient to find or uphold a contract, because the Court of Appeals of New Mexico has recognized that the State Personnel Act can create an implied employment contract.  See Eoff v. N.M. Corr. Dep't, 2010 WL 5477679, at *10.

Here, Great American alleges that Crabtree's employment is "governed by the legally enforceable terms and conditions of [employment] set forth in his written employment agreements, including St. Vincent's policies and procedures."  Amended Complaint ¶ 58, at 17.  It also provides the term which Crabtree is alleged to have violated: "the covenant of good faith and fair dealing, pursuant to which Defendant Crabtree was obligated to perform his obligations in good faith." Amended Complaint ¶ 58, at 17.  These allegations are more specific than the allegations found sufficient in McDonald v. Corrections Corporation of America and Eoff v. New Mexico Corrections Department.  While Crabtree alleges that he was an at-will employee, his at-will status does not preclude the existence of a contract.  The Supreme Court of New Mexico has explained that, in New Mexico, "an employment contract is for an indefinite period and is terminable at the will of either party unless the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise."  Hartbarger v. Frank Paxton Co., 115 N.M. at 668, 857 P.2d at 779 (emphasis added).  In its MTD Response, Great American asserts that an employment contract may be implied and will constitute a "valid written contract."  MTD Response at 18 (citing Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. at 733, 918 P.2d at 12).  "A promise, or offer, that supports an implied contract might be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct."  Gerald v. Locksley, 785 F.Supp.2d

1074, 1108 (D.N.M. 2011)(Browning, J.)(citing <u>Newberry v. Allied Stores, Inc.</u>, 108 N.M. at 426, 773 P.2d at 1233). "New Mexico courts have held that <u>every</u> contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract." <u>Sanders v. FedEx Ground Package Sys., Inc.</u>, 144 N.M. 449, 452, 188 P.3d 1200, 1203 (2008)(emphasis added)(citations omitted).

Breach-of-contract claims based on an implied contract established through an employee manual or employer policies are found to arise most often in the context of an employee suing an employer for terminating him or her without cause. <u>See West v. Wash. Tru Solutions, LLC</u>, 147 N.M. 424, 425, 224 P.3d 651, 652 (Ct. App. 2009)("Employee asserts that the district court erred in granting summary judgment in favor of Employer because genuine issues of material fact exist on the question of whether there was an implied contract that Employee would not be terminated except for cause."); <u>Garrity v. Overland Sheepskin Co. of Taos</u>, 121 N.M. 710, 713, 917 P.2d 1382, 1385 (1996)("Courts have allowed an exception to the at-will employment rule when there is an implied contract arising out of an employer's promise not to fire an employee except for just cause."). The Court has not located any cases that prohibit or establish an employer suing under an implied contract created in the employer's policies and manuals. Under general contract principles, however, both parties are bound. A contract requires "mutuality of assent," which is "[t]wo manifestations of willingness to make a bargain, though having the same terms do not constitute a bargain unless each is made with reference to the other." <u>Restatement (Second) of Contracts</u> § 23 (1981). In other words, promises do not establish a contract unless they are made in reference to each other and are binding upon both parties. The Supreme Court of New Mexico has held that "[a] contract is made when, and not before, it has been executed or accepted by both parties, so as to become binding on both parties." <u>Cessna Fin. Corp. v. Mesilla Valley Flying Serv. Inc.</u>, 81 N.M.

10, 13, 462 P.2d 144, 147 (1969).  Accordingly, these general contract principles support a finding

that an employer, as well as an employee, can sue under an implied contract.

Although New Mexico courts have not held that an employer may sue based upon an implied

contract, they have indicated that implied contracts based on policy manuals, and the terms and

conditions of employment, are mutually binding.  In Forrester v. Parker, 93 N.M. 781, 606 P.2d 191

(1980), the Supreme Court of New Mexico held, in the context of an implied contract based on a

personnel guide, that "the guide constituted an implied employment contract; the conditions and

procedures in it bound both Forrester[, the employee,] and Parker[, the employer.]" 93 N.M. at 782,

606 P.2d at 192 (emphasis added).  In Whittington v. New Mexico Department of Public Safety, 136

N.M. 503, 100 P.3d 209 (Ct. App. 2004), the Court of Appeals of New Mexico held: "Each time a

new policy is issued, that policy amends the employment relationship to the extent that the new

policy creates new terms for each party to follow."  136 N.M. at 508, 100 P.3d at 214 (emphasis

added).  In Franco v. Phelps Dodge Corp., No. 88-1516, 1990 WL 119634 (D.N.M. June 1,

1990)(Campos, J.), the Honorable Santiago E. Campos, United States District Judge, noted, citing

New Mexico law, that "[a]n implied contract is an agreement in which the parties by a course of

conduct have shown an intention to be bound by such agreement."  1990 WL 119634, at *7

(emphasis added)(citing Newberry v. Allied Stores, Inc., 108 N.M. 424, 427, 773 P.2d 1231, 1234

(1989)).  Similarly, the Tenth Circuit, in McGuire v. Continental Airlines, 210 F.3d 1141 (10th Cir.

2000), recognized that "[a]n employee must accept both the benefits and the responsibilities of an

employee handbook which creates an implied contract." 210 F.3d at 1147 (emphasis added).  These

comments and general principles of contract law convince the Court that both parties are permitted

to sue under an implied contract created in employment policies and manuals.  It would make little

sense and be unfair if only one party to such an implied contract was bound by a contract and left

unable to sue under it.  If only the employee could enforce the implied contract, the implied contract

would not be a contract, but a one-way promise.  See Salazar v. Citadel Commc'ns Corp., 135 N.M.

447, 450, 90 P.3d 466, 469 (2004)(holding that where one party "has not really promised anything

at all" they "should not be permitted to bind the other party").  Because an implied contract creates

mutual responsibilities, either party may attempt to enforce it through a breach-of-contract claim.

Ordinarily, only the employee will seek to enforce such a contract, because the employer has the

added recourse of termination.  In some circumstances, however, where a breach of contract injured

the employer, the employer may desire to, and should be able to, sue its employee for the breach.

Because the Amended Complaint alleges that the written agreements are contained in St.

Vincent Hospital's various policies and procedures, and because New Mexico allows for implied

contracts, Great American has set forth a breach-of-contract claim.  Accordingly, the Amended

Complaint establishes that there was a contract, and the Court will not dismiss Count IV under rule

12(b)(6).[6]

## V.      THE COURT CANNOT PROPERLY DETERMINE WHETHER CRABTREE IS AN INSURED AT THIS STAGE OF THE LITIGATION.

Crabtree asserts that Great American cannot seek subrogation against him, because, as a

member of St. Vincent Hospital, he is Great American's insured.  See Motion to Dismiss at 18.

Regarding its subrogation rights, Great American argues that it paid over three million dollars to St.

Vincent Hospital, because of losses incurred to St. Vincent Hospital, its insured, as a consequence

of Crabtree's conduct.  See MTD Response at 18.  It asserts that "Crabtree is not the insured, but the

wrongdoer."  MTD Response at 18 (citing Chrysler Ins. Co. v. Dorminey, 271 Ga. at 557, 522

---

[6]Crabtree challenges only the existence of a contract.  He asserts that: "Plaintiff is suing Mr.
Crabtree for breach of contract even though they have utterly failed to allege what, if any,
enforceable written contract that he breached."  MTD at 18.

S.E.2d at 233).

In State ex rel. Regents of New Mexico State University v. Siplast, Inc., the Supreme Court

of New Mexico held that "we choose to follow the majority of jurisdictions and recognize the rule

that 'an insurer may not be subrogated against an insurer who is insured against damage to his own

property under a builder's risk policy, even though the subcontractor's negligence may have resulted

in a loss to another co-insured." 117 N.M. at 742, 877 P.2d at 42.  It noted that the reasoning behind

this rule is:

> Individuals understand that insurance will protect them against the consequences of
> their own negligence and more than likely assume that if one who is a party to a
> contract agrees as part of his or its duties to provide insurance, that the insurance will
> protect both of them regardless of the cause of the loss (excepting, of course, wanton
> and willful acts).

State ex rel. Regents of N.M. State Univ. v. Siplast, Inc., 117 N.M. at 742, 877 P.2d at 42 (emphasis

added)(quoting Morsches Lumber, Inc. v. Probst, 180 Ind. App. 202, 388 N.E.2d 284, 287 (Ind.

App. 1979)).

The Court first notes that it is unable to determine, based on the record before it, that

Crabtree qualifies as an insured under Great American's insurance policy.  The Court does not have

the insurance policy before it.  Crabtree asserts that he is an insured, and Great American argues that

he is not.  Without the insurance contract before it, the Court cannot determine whether Crabtree

would qualify as an insured under the policy.  This step is the first one that the Court must take

under the analysis in State ex rel. Regents of New Mexico State University v. Siplast, Inc.  See 117

N.M. at 741, 877 P.2d at 41 ("We have already determined . . . that Siplast was a subcontractor

under the construction contract and under New Mexico law.  As a subcontractor, Siplast was insured

under this policy.").  Furthermore, Great American argues, "[b]ecause the wrongful acts were all

committed outside the course and scope of his employment, Defendant Crabtree was not an insured

-52-

under St. Vincent's insurance policy."  MTD Response at 18 (citing Fed. Ins. Co. v. Ward, 166

F.App'x at 29-30).  Accordingly, because no party has submitted the insurance policy, the Court

cannot determine whether Crabtree is an insured and will not dismiss the action for failure to state

a claim.

Moreover, Great American points out, Crabtree is the alleged wrongdoer in this case, and

he is alleged to have defrauded St. Vincent Hospital.  The New Mexico courts have not otherwise

analyzed whether an insurer may seek subrogation against an insured who has engaged in fraudulent

or willful conduct.  The entirety of Crabtree's argument in his Motion to Dismiss that Great

American may not subrogate against him consists of three sentences: "This entire lawsuit is based

upon St. Vincent assigning its rights to GAIC.  However, Crabtree was a member of St. Vincent and

thus he is GAIC's insured.  An insurance company cannot subrograte against its own insured."

Motion to Dismiss at 18 (citation omitted).  When a federal court is confronted with a state law

question in a diversity case, the Court "must determine what a state's Supreme Court would do if

confronted with the same issue."  Skyline Potato Co., Inc. v. Tan-O-On Mktg., Inc., No. 10-0698,

2012 WL 2922751, at *21 n.6 (D.N.M. July 4, 2012)(Browning, J.).  In the absence of any New

Mexico authority on this issue, the Court stands in the shoes of the Supreme Court of New Mexico

and looks at what other courts have done.  The Supreme Court of North Dakota has held: "The rule

precluding an insurer's subrogation claim against a co-insured generally applies absent fraud or

design by the co-insured."  Am. Nat'l Fire Ins. Co. v. Hughes, 658 N.W.2d 330, 334 (N.D.

2003)(emphasis added).  The Supreme Court of New Mexico relied on case law from Indiana to

establish this anti-subrogation rule and the Court of Appeals of Indiana has noted that this rule

applies "in the absence of design or fraud."  S.C. Nestel, Inc. v. Future Constr., Inc., 836 N.E.2d 445,

450 (Ind. App. 2005).  Accord Sherwood Med. Co. v. B.P.S. Guard Servs., Inc., 882 S.W.2d 160,

162 (Mo. App. E.D. 1994)("The 'no subrogation' rule holds 'where an insurance company attempts to recover, as a subrogee, from a coinsured generally covered under the policy, whose negligent act occasioned the loss, the action must fail <u>in the absence of design or fraud on the part of the coinsured</u>." (emphasis added)); <u>Fashion Place Inv., Ltd v. Salt Lake Cnty.</u>, 776 P.2d 941, 945 (Utah App. 1989)("<u>In the absence of design or fraud on the part of the coinsured</u>, no subrogation may be taken against such a party." (emphasis added)).

The Court located no cases in which a court, following the "anti-subrogation rule," held that an insurer could not subrogate against a coinsured for fraud.  Moreover, the Supreme Court of New Mexico, in discussing the reasoning behind the anti-subrogation rule, noted that the rule applies "excepting, of course, wanton and willful acts."  <u>State ex rel. Regents of N.M. State Univ. v. Siplast, Inc.</u>, 117 N.M. at 742, 877 P.2d at 42 (citation omitted).  Additionally, the Indiana courts, upon whom the Supreme Court of New Mexico has previously relied in this area, have also held that the anti-subrogation rule applies "in the absence of design or fraud."  <u>S.C. Nestel, Inc. v. Future Constr., Inc.</u>, 836 N.E.2d at 450.  Accordingly, the Court finds that the Supreme Court of New Mexico would likely agree with those state courts and hold that an insurer may seek subrogation against a coinsured for fraud.  The Court will therefore not dismiss the causes of action against Crabtree, even if he is a coinsured.

**IT IS ORDERED** that: (i) Defendant Richard Crabtree's Motion to Dismiss with Prejudice Under Fed. R. Civ. P. 12(b), filed March 9, 2012 (Doc. 28), is denied; (ii) the Motion to Consolidate, filed April 13, 2012 (Doc. 33), is denied without prejudice to subsequent renewal; and (iii) Plaintiff's Motion to Strike Exhibits Attached to Defendant Crabtree's Motion to Dismiss, filed April 26, 2012 (Doc. 39), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel*:

Richard W. Hughes
John C. Bienvenu
Kristina Martinez
Rothstein Donatelli Hughes Dahlstrom Schoenburg & Bienvenu, LLP
Santa Fe, New Mexico

    *Attorneys for the Plaintiff*

Jason Bowles
B.J. Crow
Monica Garcia
Bowles & Crow
Albuquerque, New Mexico

    *Attorneys for Defendant Richard A. Crabtree*

Harold W. Lavender
Robert N. Singer
New Mexico Law Group, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Michael Gallegos and Compliance Process Innovative Solutions
        LLC*

Paul J. Kennedy
Darin M. Foster
Kennedy & Han
Albuquerque, New Mexico

--and--

Andrew S. Himoff
Peter L. Kilpatrick
Langley & Banack, Inc.
San Antonio, Texas

    *Attorneys for Defendants Steven R Gallegos and Vesa Health LLC,*

Loretta Mares

    *Defendant pro se*